UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC., ELSEVIER, INC., MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, PEARSON EDUCATION, INC., and JOHN WILEY & SONS, INC.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>MIKE SHI a/k/a YI SHI, JENNY LI, JACKIE OSWALD, and DOES 1-10 d/b/a BOLTEBOOKS.COM and EBOOKAVE.COM.<br><br>　　　　　　Defendants. | Case No. 13 CV 7772-JSR<br><br>COMPLAINT FOR:<br><br>1. COPYRIGHT INFRINGEMENT<br>2. SECONDARY LIABILITY FOR COPYRIGHT INFRINGMENT<br>3. TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)<br>4. TRADEMARK DILUTION (15 U.S.C. § 1125(c))<br>5. UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Cengage Learning, Inc., Elsevier Ltd., McGraw-Hill Global Education Holdings, LLC, Pearson Education, Inc., and John Wiley & Sons, Inc. (collectively, "Plaintiffs"), for their Complaint against Defendants Mike Shi (also known as Yi Shi), Jenny Li, Jackie Oswald, and Does 1-10 doing business as boltebooks.com and ebookave.com (collectively, "Defendants") allege, on personal knowledge as to matters relating to themselves and on information and belief as to all other matters, as follows:

**INTRODUCTION**

1.　　Plaintiffs are among the world's leading educational publishers.　They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

1

2. Defendants are repeat infringers of Plaintiffs' intellectual property rights. Defendants currently run an online marketplace, located at www.ebookave.com ("Ebookave"), through which they advertise and sell in the United States unauthorized and infringing copies of Plaintiffs' copyrighted works that bear Plaintiffs' U.S.-registered trademarks. Prior to launching Ebookave, Defendants marketed and sold infringing copies of Plaintiffs' copyrighted works at another website, located at www.boltebook.com ("Boltebook," and collectively with Ebookave, the "Websites").

3. Upon learning of Defendants' infringing conduct, Plaintiffs were temporarily successful at limiting it by issuing take-down notices to the Internet Service Providers ("ISPs") that were hosting the site. In fact, following Plaintiffs' effort to take action against the infringement, the Boltebook site came down permanently. But, bent on profiting from infringement, Defendants have resumed their illegal activities at the Ebookave site. Defendants have profited handsomely from the unauthorized reproduction, distribution, and sale of Plaintiffs' copyrighted works.

4. Plaintiffs sent notices to Defendants informing them that their activity infringes Plaintiffs' copyrights and trademarks and demanding that Defendants cease and desist the infringement. Unfortunately, Defendants continue the infringement undeterred.

5. Defendants have infringed Plaintiffs' copyrighted works and U.S.-registered trademarks knowingly and willfully. Plaintiffs bring this Complaint for damages and injunctive relief to bring an end to and seek redress for Defendants' widespread infringement of Plaintiffs' intellectual property rights.

**JURISDICTION AND VENUE**

6. This is an action arising under the Copyright Act, 17 U.S.C. § 101 *et al*, and the Lanham Act §§ 32, 43, 15 U.S.C. §§ 1114, 1125.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, based on federal question jurisdiction. Venue is proper in this district under 28

U.S.C. §§ 1391, 1400(a).   This Court has personal jurisdiction over Defendants because Defendants operated interactive websites with national reach and advertising used to conduct the illicit commercial transactions that are the subject of this action.   Defendants' infringing sales include the sale of infringing copies of Plaintiffs' textbooks and supplementary materials, such as instructor's solution manuals, to customers and Plaintiffs in this District.   Through their infringing conduct, Defendants have also harmed Plaintiffs in this District.

## PARTIES

8.   Plaintiff Cengage Learning Inc., formerly Thomson Learning, Inc., ("Cengage") is a Delaware corporation, with its principal place of business at 200 First Stamford Place, 4th Floor, Stamford, Connecticut, 06902.

9.   Plaintiff Elsevier, Inc. ("Elsevier") is a Delaware corporation with a principal place of business at 360 Park Avenue South, New York, New York 10010.

10.   Plaintiff McGraw-Hill Global Education Holdings, LLC ("McGraw-Hill") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 2 Penn Plaza, New York, New York, 10121.

11.   Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation, with its principal place of business at One Lake Street, Upper Saddle River, New Jersey, 07458.

12.   Plaintiff John Wiley & Sons, Inc. ("Wiley") is a New York corporation with its principal place of business at 111 River Street, Hoboken, New Jersey, 07030.

13.   Defendant Mike Shi, also known as Yi Shi, is an individual who resides and/or does business at 8326 South Yorktown Avenue, Tulsa, Oklahoma, 74137.

14.   Yi Shi was the defendant in another lawsuit Plaintiffs, save Elsevier, brought in this court alleging copyright and trademark infringement, among other claims.   That case was captioned *Pearson Educ., Inc. v. Yi Shi*, Civil Action No. 06-11504 (VM), in the District Court for the Southern District of New York.   Plaintiffs alleged that Yi Shi reproduced and sold infringing electronic copies of plaintiffs' textbooks and instructor's solution manuals through

one or more online marketplaces. The court entered final judgment and a permanent injunction against Yi Shi, doing business as collegesolutions.tripod.com and various online usernames. Under the final judgment, Yi Shi was ordered to pay damages and enjoined from further infringement. Plaintiffs believe that Yi Shi is now going by the name Mike Shi and has done or is doing business as Boltebook and Ebookave.

15. Defendant Jenny Li is an individual whose last known address is 2555 Victor Avenue, Glenview, Illinois, 60025.

16. Defendant Jackie Oswald is an individual who resides and/or does business at 8324 South Yorktown Avenue, Tulsa, Oklahoma, 74137.

17. Defendant Does 1 through 10 are associates of Mike Shi, Jenny Li, and Jackie Oswald who assist with and/or profit from the infringing activities described herein.

## GENERAL ALLEGATIONS

18. Cengage is among the world's largest providers of tailored learning solutions. In the academic marketplace, Cengage serves secondary, post-secondary and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments. Cengage products and services are sold throughout the world, through direct channels and via a worldwide network of distributors. Cengage invests significant resources annually in the worldwide advertisement and promotion of its goods and services under all its marks.

19. Elsevier, along with its affiliates, is the world's leading publisher of science and health information. Their books, journals, and online content are used and relied upon by scientists, health professionals, and students throughout the world. Elsevier and its affiliates publish their books under several distinguished imprints, including Academic Press, Butterworth-Heinemann, CIMA Publishing, Morgan Kaufmann, Mosby, Newnes, Saunders, Syngress, and William Andrew.

20. McGraw-Hill is a global publisher and lifelong learning partner to students and

teachers of all kinds and addresses virtually every aspect of the education market from pre-kindergarten through professional learning, using traditional materials, online learning and multimedia tools.   McGraw-Hill is also a leading provider of reference and trade publishing for the medical, business, engineering, and other professions.

21. Pearson is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage.   With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Pearson provides quality content, assessment tools, and educational services in all available media.

22. Wiley serves undergraduate, graduate, and advanced placement students, and lifelong learners throughout the world. Wiley publishes educational materials in print and electronic media, notably through WileyPLUS, an integrated online suite of teaching and learning resources.   Wiley's programs target the sciences, engineering, computer science, mathematics, business and accounting, statistics, geography, hospitality and the culinary arts, education, psychology, and modern languages.

23. Plaintiffs' publications include physical and digital textbooks, as well as online publications (collectively, "Textbooks").   These Textbooks are widely available in the marketplace for sale, rental, or subscription, including from physical and online bookstores.

24. Plaintiffs frequently produce and publish supplementary materials for their textbooks, including Instructor's Solutions Manuals ("ISMs").   These ISMs are not generally distributed to the public in order to preserve the pedagogical value of the problem sets contained within the Textbooks.   Rather, they are provided exclusively to professors and teachers on a limited and restricted basis.

25. Plaintiffs invest heavily in Textbook publishing.   Each year they incur substantial costs for: author royalties or other costs of content creation or licensing; copyediting, proofreading, typesetting, layout, printing, binding, distribution, and promotion;

5

and support of their editorial offices.

26. The revenue from Plaintiffs' sales and rentals of Textbooks represents a substantial portion of Plaintiffs' respective annual revenues, and is therefore important to their financial health.

27. Plaintiffs suffer serious financial injury when their copyrights and trademarks are infringed. A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publication of one or more deserving Textbooks. This would have an adverse impact on the creation of new Textbooks, on scholarly endeavor, and on scientific progress, by making it more difficult to publish deserving Textbooks.

28. Both publishers and authors alike are deprived of income when their Textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

29. When college and university professors select textbooks from competing publishers, they consider the value, quality, and effectiveness of a particular textbook's supplementary materials, such as ISMs ("Supplementary Materials"). Professors use the Supplementary Materials to create lesson plans, homework assignments, and exams and to grade students' assignments and exams. Students with unauthorized access, however, use the Supplementary Materials to gain an unfair advantage. Professors are less likely to select a textbook if the Supplementary Materials are freely and/or widely available. Accordingly, Plaintiffs do not sell their Supplementary Materials, and tightly control their distribution to known faculty. Unauthorized reproduction and distribution of the Supplementary Materials causes significant financial harm to Plaintiffs.

### PLAINTIFFS' COPYRIGHTS AND TRADEMARKS

**A. Plaintiffs' Respective Copyrights**

30. Plaintiffs are the copyright owners of, and/or the owners of exclusive rights in, among many others, those works described on Exhibit A (hereinafter "Plaintiffs' Authentic

6

Works"). Plaintiffs, or their affiliates, have each duly registered their respective copyrights in Plaintiffs' Authentic Works.

      **B.**    **Plaintiffs' Respective Trademarks**

      31.    Plaintiffs' Authentic Works bear trademarks and service marks as set forth in Exhibit B (hereinafter "Plaintiffs' Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Register of the United States Patent and Trademark Office. Plaintiffs own or are the exclusive licensee of Plaintiffs' Marks. Plaintiffs' Marks are distinctive and arbitrary and in some cases are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. Plaintiffs and/or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs' Marks.

## DEFENDANTS' INFRINGING CONDUCT

      32.    Defendants own, operate, administer, and manage the Websites. Defendants use the Websites to sell infringing copies of the Textbooks and Supplementary Materials to individual consumers, including consumers in New York.

      33.    Defendants have without permission reproduced Plaintiffs' Textbooks and Supplementary Materials in electronic format. Defendants have sold the infringing Textbooks and Supplementary Materials through their Websites, distributing the Textbooks and Supplementary Materials to purchasers over the Internet. Defendants continue to distribute infringing electronic copies of the Textbooks and Supplementary Materials. As of the filing of this Complaint, Defendants have more than 884 textbook titles and 1141 ISMs for sale on Ebookave. Of the textbooks for sale, 757 are Plaintiffs' Textbooks. Indeed, the Website contains a massive, searchable database of infringing Textbooks and Supplementary Materials that Defendants currently offer for sale on any given day.

      34.    In late 2011, Plaintiffs discovered that infringing copies of their Textbooks and Supplementary Materials were being sold on the Boltebook site.

7

35. On February 8, 2012, Plaintiffs' attorneys issued a subpoena to the ISP hosting Boltebook, pursuant to the Digital Millennium Copyright Act ("First DMCA Subpoena"). The ISP responded to the First DMCA Subpoena, providing Boltebook's operator's name, mailing address, email address, telephone number, and payment method. Boltebook's contact was listed as Mike Shi, with an address in Glenview, Illinois.

36. Plaintiffs' attorneys attempted without success to hand deliver a cease-and-desist letter to Mike Shi at the address the ISP provided. Plaintiffs' attorneys also attempted to contact Mike Shi at the telephone number the ISP provided, but were told that Mike Shi is not associated with that telephone number.

37. Using the email address the ISP provided, Plaintiffs' attorneys also emailed a cease-and-desist letter to Defendants notifying them that Boltebook sold infringing copies of Plaintiffs' Textbooks and Supplementary Materials and demanding that Defendants cease their infringing activity. Defendants did not respond.

38. However, on February 13, 2012, Defendants changed their account contact name with their ISP from Mike Shi to Jenny Li. The contact telephone number also changed, but the mailing and email addresses remained the same. The new telephone number provided is assigned to two individuals who appear to have no relationship with Defendants.

39. On July 23, 2012, Plaintiffs' attorneys emailed a second cease-and-desist letter to Defendants, but again they did not respond.

40. Instead, through IP blocking, Defendants have blocked Plaintiffs' and their attorneys' office IP addresses, preventing them from accessing the Boltebook site (when on their office servers).

41. By August 7, 2012, the Boltebook site was taken down, apparently because it was in clear violation of its ISP's terms of service.

42. The hiatus was short-lived. In early 2013, Plaintiffs learned that Defendants had resurfaced. Not to be deterred from their illegitimate purpose, Defendants moved to a new domain (www.ebookave.com) and new ISP, and resumed selling infringing Textbooks and

Supplementary Materials.

43. Plaintiffs then sent a DMCA subpoena to the ISP hosting Ebookave. The ISP responded on March 28, 2013, providing Ebookave's operator's contact name, mailing and email addresses, telephone number, and partial account history detail. The Ebookave domain account was created on December 15, 2012. The contact name for Ebookave's operator was listed as Jackie Oswald, with a mailing address in Tulsa, Oklahoma. The account detail shows that, similar to Boltebook, the Ebookave domain was originally set up under Mike Shi's name and later changed to a new name after Plaintiffs issued a DMCA subpoena to the ISP host. In Ebookave's case, that is, Defendants changed the contact name from Mike Shi to Jackie Oswald on March 5, 2013. In addition, Defendants changed the last digit of the house number in the account mailing address. All other contact information remained the same.

44. Also as with the Boltebook site, through IP blocking, Defendants blocked Plaintiffs and their attorneys from accessing the Ebookave site from their offices.

45. On March 24, 2013, the ISP hosting Ebookave stopped providing service to Defendants apparently because of their clear non-compliance with its terms of service. However, Ebookave remains an active website now hosted by yet another ISP.

46. Ebookave is a massive online marketplace selling thousands of copyrighted works without authorization to do so. By marketing and design, Ebookave is a business built upon infringing the works of others. The Ebookave site overwhelmingly consists of infringing copies of copyrighted works. Ebookave advertises that its catalogue of electronic textbooks and supplementary materials includes *thousands* of titles. When visiting the site, a user can search by title, International Standard Book Number ("ISBN"), or keyword. A user can also browse titles of infringing works by subject-matter ranging from Biology and Anatomy to Statistics. Ebookave displays an image of the printed work's cover, along with a description of the content and the title's ISBN. Ebookave makes it even easier for its customers by cross-referencing the ISBNs for the Textbooks and their accompanying Supplementary Materials. At the touch of a few keystrokes, a user can purchase and

download infringing copies of Plaintiffs' Textbooks and Supplementary Materials. The Ebookave site was created and exists to infringe. Rather than take the steps necessary to operate a non-infringing online store, Defendants instead chose to gather and upload thousands of infringing works to distribute for Defendants' financial benefit.

47. Exhibit A lists Plaintiffs' Authentic Works, which are a representative sample of the infringing works being sold by and through Ebookave.

### FIRST CLAIM FOR RELIEF
**Copyright Infringement Under 17 U.S.C. §§ 101 *et seq.*** 

48. Plaintiffs repeat and reallege each and every one of the foregoing allegation as if set forth at length herein.

49. Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and have been duly registered with the United States Copyright Office.

50. At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to any of the Defendants.

51. Beginning on an unknown date, but at least as early as 2011, and continuing to the present, Defendants, with knowledge of Plaintiffs' duly registered copyrights in the Authentic Works, infringed Plaintiffs' copyrights by, among other things, deliberately reproducing and distributing the infringing copies of Plaintiffs' Authentic Works for profit, without the permission, license, or consent of Plaintiffs.

52. Defendants undertook these actions both individually and jointly.

53. As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

54. Defendants' unlawful conduct, as set forth above, was deliberate, intentional,

knowing, malicious and willful.

55. Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law. Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.

56. Accordingly, Defendants are liable for direct infringement of Plaintiffs' Authentic Works.

## SECOND CLAIM FOR RELIEF

### Secondary Liability for Copyright Infringement
### (Contributory Liability, Vicarious Liability, and Inducement)

57. Plaintiffs repeat and reallege each and every one of the foregoing allegation as if set forth at length herein.

58. Defendants are well aware of the massive copyright infringement that they are engaging in, encouraging, facilitating, and financially benefiting from, by and through the Websites.

59. Defendants materially contribute to the infringement including, without limitation, by providing the site and facilities for the infringement that is occurring or has occurred through the Websites.

60. Defendants have the right and ability to control the infringement. They decide which Textbooks and Supplementary Materials are or were sold on the Websites. Moreover, at the time of every sale, they have the ability to process a sale or reject it. In these and other ways, Defendants have the right and ability to control the infringement that is occurring or has occurred through the Websites.

61. Defendants profit directly from the infringing behavior both directly from the sales of the Textbooks and Supplementary Materials, but also because the infringing works draw customers to the Websites, which further generates sales for Defendants. As such, in

these and other ways, Defendants are profiting from the infringing activity.

62.     Defendants are liable for inducing copyright infringement.  Defendants promote the sale of infringing Textbooks and Supplementary Materials, thereby actively facilitating, encouraging, and enticing the Websites' customers to engage in infringement. Indeed, by uploading thousands of copyrighted works to the Websites for sale, and in other ways, Defendants intend to bring about such infringement.  Through such conduct, Defendants are liable for inducing the infringement described herein.

63.     Defendants' infringement is and has been deliberate, intentional, knowing, malicious and willful.

64.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.

65.     Accordingly, Defendants are liable for contributory infringement, vicarious infringement, and inducement of the underlying direct infringement of Plaintiffs' Authentic Works.

### THIRD CLAIM FOR RELIEF

**Infringement of Federally-Registered Trademarks Under 15 U.S.C. § 1114**

66.     Plaintiffs repeat and reallege each and every one of the foregoing allegation as if set forth at length herein.

67.     This claim, arising under Section 32 of the Lanham Act (15 U.S.C. § 1114), is for infringement of trademarks registered to Plaintiffs in the United States Patent and Trademark Office.

68.     Without Plaintiffs' authorization, Defendants are producing, marketing, offering for sale, and selling in commerce textbooks under Plaintiffs' Marks.

69.     Defendants' aforesaid uses of Plaintiffs' Marks have caused and are likely to

continue to cause confusion, mistake, and/or deception as to the source or origin of Defendants goods, in that the public, and others, are likely to believe that Defendants' goods are provided by, sponsored by, approved by, licensed by, affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs' irreparable harm.

70. Plaintiffs are informed and believe, and on that basis allege, that Defendants will continue to use Plaintiffs' Marks unless enjoined.

71. Defendants, by their above-enumerated acts, willfully and knowingly violated and infringed Plaintiffs' rights in and to the federally-registered Marks, in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114), and Defendants threaten to further violate and infringe Plaintiffs' said rights.

72. Defendants' aforesaid conduct is and was intentional, or deliberately reckless, and without foundation in law.

73. Accordingly, Defendants are liable for infringement of Plaintiffs' Marks.

### FOURTH CLAIM FOR RELIEF

**Trademark Dilution In Violation of 15 U.S.C. § 1125(c)**

74. Plaintiffs repeat and reallege each and every one of the foregoing allegation as if set forth at length herein.

75. Plaintiffs' Marks are famous marks entitled to protection from dilution under 15 U.S.C. § 1125(c). Moreover, Plaintiffs have taken reasonable steps to preserve the integrity and image of their Marks.

76. Defendants' unauthorized, intentional and intended use of Plaintiffs' Marks in commerce has led to the dilution of the distinctive quality of Plaintiffs' Marks including, but not limited to, the blurring and tarnishing of Plaintiffs' Marks, in violation of 15 U.S.C. § 1125(c). Defendants' actions have lessened or have the tendency to lessen the capacity of consumers to distinguish the goods and services of Plaintiffs.

77. Defendants intentionally and willfully traded upon Plaintiffs' renowned

reputation and goodwill, and willfully sought to dilute the Plaintiffs' famous Marks. Defendants' conduct is and was intentionally fraudulent, malicious, willful, and wanton.

78.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Plaintiffs' Marks.   Defendants continue to commit such acts, and unless restrained and enjoined, will continue to do so, to Plaintiffs' irreparable injury. Plaintiffs' remedy at law is inadequate to compensate them for injuries inflicted and threatened by Defendants.

### FIFTH CLAIM FOR RELIEF
#### Federal Unfair Competition/False Designation of Origin

79.     Plaintiffs repeat and reallege each and every one of the foregoing allegation as if set forth at length herein.

80.     Defendants' acts and conduct constitute a false designation of origin, and are likely to cause confusion or mistake, or deceive as to affiliation, connection, or association of Defendants with Plaintiffs, and as to origin, sponsorship, and/or approval of such products by Plaintiffs.

81.     Defendants' use in commerce of Plaintiffs' Marks, on or in connection with their products, constitutes a false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82.     Defendants' unauthorized use of Plaintiffs' Marks on or in connection with their business and/or its products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs.   Plaintiffs are informed and believe, and on that basis allege, that Defendants willfully used and continue to use Plaintiffs' Marks with the intent to confuse, mislead, or deceive consumers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of the products, and with the intent to trade on the reputation and goodwill of Plaintiffs' Marks that were acquired by each of the respective Plaintiffs.

83. As a direct and proximate result of Defendants' acts of unfair competition, false designation, advertising, description, and representation, Plaintiffs have suffered irreparable harm to the valuable Plaintiffs' Marks. Defendants continue to commit such acts, and unless restrained and enjoined, will continue to do so, to Plaintiffs' irreparable injury. Plaintiffs' remedy at law is inadequate to compensate them for injuries inflicted and threatened by Defendants.

84. Defendants used and are continuing to use Plaintiffs' Marks with full knowledge of Plaintiffs' rights, and in bad faith with willful and deliberate intent to trade on the substantial recognition, reputation, and goodwill of Plaintiffs' Marks. In view of the willful nature of Defendants' infringement and unfair competition, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

85. Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

86. An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the infringing Textbooks and Supplementary Materials with documents relating to all of the purchases and sales;

87. That Defendants be required to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504 and 15 U.S.C. § 1117;

88. An order enjoining Defendants from further infringing upon Plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

89. An order enjoining Defendants from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

90. That Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations, of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

91. An order preventing the further unfairly competitive acts by Defendants;

92. For prejudgment interest at the applicable rate;

93. For costs and reasonable attorneys' fees and expenses; and

94. For such other and further relief the Court deems proper.

DATED: October 30, 2013

By: /s/ Matthew J. Oppenheim

Matthew J. Oppenheim
Scott A. Zebrak
Kerry M. Mustico
Oppenheim + Zebrak, LLP
4400 Jenifer Street, NW, Suite 250
Washington, DC 20015
Tel:   202-621-9027
matt@oandzlaw.com
scott@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs CENGAGE LEARNING, INC., ELSEVIER, INC., JOHN WILEY & SONS, INC., McGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, and PEARSON EDUCATION, INC.*