UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

CENGAGE LEARNING, INC., ELSEVIER, :
INC., MCGRAW-HILL GLOBAL
EDUCATION HOLDINGS, LLC,
PEARSON EDUCATION, INC., and :
JOHN WILEY & SONS, INC.,      :    **REPORT AND**
                                   **RECOMMENDATION**
                Plaintiffs, :    **TO THE HONORABLE**
                                   **VERNON S. BRODERICK**[*]

           - against -    :
                                   13cv7772-VSB-FM

MIKE SHI a/k/a YI SHI, JENNY LI, and :
JACKIE OSWALD, d/b/a
BOLTEBOOKS.COM and EBOOKAVE.COM,:

                Defendants.    :

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.    Introduction

        In this action, five plaintiffs, Cengage Learning, Inc., Elsevier, Inc., McGraw-Hill Global Education Holdings, LLC, Pearson Education, Inc., and John Wiley & Sons, Inc., (collectively, the "Plaintiffs"), allege that defendant Mike Shi ("Shi"), doing business as BolteBooks.com and eBookAve.com (the "Websites," and, together with Shi, the "Defendants"), unlawfully reproduced and sold electronic copies of the Plaintiffs' copyrighted and trademarked textbooks and instructor solution manuals, in violation of the Copyright Act of 1976, 17 U.S.C. § 101, et seq., and the Lanham Act, 15 U.S.C.

---

[*]    This Report and Recommendation was prepared with the substantial assistance of Lelia A. James, a student at the City University of New York School of Law.

§ 1051, et seq. (See ECF No. 1 ("Complaint" or "Compl.")). The Plaintiffs also seek an injunction permanently enjoining the Defendants from engaging in any future infringements of their copyrights and trademarks. (ECF No. 44 (Pls.' Proposed Findings of Fact and Conclusions of Law ("Pls.' Inquest Mem.")))). After the Defendants failed to respond to the Complaint, the Clerk of the Court entered a certificate of default, Your Honor held an order to show cause hearing, (see ECF Nos. 27-36, 40), and the case was referred to me to conduct an inquest, (see ECF No. 41).

On October 29, 2014, I directed that the Plaintiffs serve and file their inquest papers by December 23, 2014, and that the Defendants file their response by January 6, 2015. (ECF No. 42). The Plaintiffs complied with their deadline, (see ECF No. 44), but the Defendants have not had any contact with the Court. Having reviewed the Plaintiffs' papers, I recommend that they be awarded statutory damages in the amount of $5 million under the Copyright Act only,[2] as well as prejudgment interest on that amount at the rate set forth in 28 U.S.C. § 1961. The Plaintiffs should also be granted an injunction permanently enjoining the Defendants from further infringing the Plaintiffs' copyrights and trademarks.

---

[2] As set forth more fully herein, the Plaintiffs are not entitled to an award of statutory damages under the Lanham Act because the copyright infringements are the substantial cause of the Plaintiffs' harm. See Tu v. TAD Sys. Tech. Inc., No. 08-CV-3822 (SLT) (RM), 2009 WL 2905780, at *4, *6 (E.D.N.Y. Sept. 10, 2009).

II.     Facts

The Plaintiffs' inquest papers establish the following:

Cengage Learning Inc., formerly Thomson Learning, Inc., ("Cengage") is a Delaware corporation with its principal place of business in Connecticut.  (Compl. ¶ 8).

Elsevier, Inc. ("Elsevier") is a Delaware corporation with a principal place of business in New York.  (Id. ¶ 9).

McGraw-Hill Global Education Holdings, LLC ("McGraw-Hill") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in New York.  (Id. ¶ 10).

Pearson Education, Inc. ("Pearson") is a Delaware corporation, with its principal place of business in New Jersey.  (Id. ¶ 11).

John Wiley & Sons, Inc. ("Wiley") is a New York corporation with its principal place of business in New Jersey.  (Id. ¶ 12).

The Plaintiffs are among the world's leading educational publishers of physical and digital textbooks.  (Id. ¶¶ 1, 18-23).  To accompany these textbooks, the Plaintiffs also produce and publish supplementary materials for professors and teachers.  (Id. ¶ 24).  These supplementary materials are used by educators to create lesson plans, homework assignments, and exams, and for grading purposes.  (Id. ¶ 29).  In order to "preserve the pedagogical value" of their educational products, the Plaintiffs make these additional materials available only on a limited basis, and do not sell them to the general public.  (Id. ¶¶ 24, 29).  For this same reason, educators are less likely to purchase

3

textbooks whose supplementary materials are widely available. (Id. ¶ 29). Accordingly, the unauthorized sale and distribution of the Plaintiffs' supplementary materials results in significant financial harm to them. (Id. ¶¶ 26-29).

Since 2011, Shi has advertised and sold on the Websites unauthorized electronic copies of the Plaintiffs' copyrighted works which also bear their registered United States trademarks. (Id. ¶¶ 2, 34, 42). The Plaintiffs' efforts to stop Shi's unauthorized sales have been stymied by his continuing efforts to conceal his identity and location, through such means as continuously changing servers, IP addresses, and hosts, and using false names and old addresses. (Id. ¶¶ 14, 35-36, 38, 40, 42-44; (ECF No. 8 (Decl. of Kerry M. Mustico, Esq., dated Dec. 30, 2013 ("First Mustico Decl.")) ¶¶ 3-8)).

In 2006, the Plaintiffs (excluding Elsevier) brought a copyright and trademark infringement lawsuit against Shi in this Court. In that action, they alleged that Shi had engaged in unauthorized sales of their protected materials in much the same manner as they have alleged here. (Compl. ¶ 4); Pearson Educ., Inc., v. Yi Shi, 06 Civ. 11504 (VM). In that action, unlike here, Shi appeared and retained counsel. (See 06 Civ. 11504 ECF Nos. 10, 11). After counsel withdrew, (id. ECF No. 40), Judge Marrero entered a consent judgment on March 6, 2008, pursuant to which Shi was ordered to pay damages in the amount of $34,000, and was permanently enjoined from engaging in further infringing activity, (id. ECF No. 44).

More recently, the Plaintiffs discovered that unauthorized copies of their textbooks and supplementary materials were being electronically distributed on the

BolteBook website. (Compl. ¶ 34). In February 2012, in response to a subpoena, the internet service provider ("ISP") hosting BolteBook informed the Plaintiffs that Shi was the operator of the website. (Id. ¶ 35). Using the contact information for Shi that the ISP provided, the Plaintiffs attempted to serve Shi with a cease-and-desist letter demanding that he discontinue the unauthorized sale of their textbooks and supplementary materials, but they received no response. (Id. ¶ 36). The Plaintiffs also attempted to contact Shi using the telephone number the ISP provided, again without success. (Id.). Tellingly, however, Shi subsequently changed the name of the website operator to "Jenny Li," although the mailing and email addresses remained the same. (Id. ¶ 38). After the Plaintiffs sent a second cease-and-desist letter, Shi blocked the office IP addresses of the Plaintiffs and their attorneys, preventing them from accessing the BolteBook website from work. (Id. ¶¶ 39-40).

In August 2012, BolteBook's ISP took down the website for violations of its terms of service. (Id. ¶ 41). Thereafter, in early 2013, the Plaintiffs learned that Shi once again was selling unauthorized copies of the Plaintiffs' textbooks and supplementary materials, this time through the eBookAve website. (Id. ¶¶ 33, 42). In response to a subpoena, the eBookAve ISP indicated that Mike Shi was the original operator of the site, but that the site operator's name had been changed to "Jackie Oswald." Once again, Shi blocked the Plaintiffs and their attorneys from accessing the site from their office computers. (Id. ¶¶ 43-44). In March 2013, the ISP hosting eBookAve took down the site for violations of its terms of service, but Shi obtained another ISP host and maintained the

website.  (Id. ¶ 45).  Shi ultimately switched to a Switzerland-based ISP host for the website.  (ECF No. 16 (Decl. of Kerry M. Mustico, Esq. dated Apr. 2, 2014 ("Second Mustico Decl.")) ¶ 25).

As of the date this suit was filed, 757 of the 884 textbooks available on the eBookAve site were the Plaintiffs' works.  (Compl. ¶ 33).[3]  The eBookAve site displayed images of the covers of the Plaintiffs' textbooks, which typically included their trademarks, and cross-referenced the textbooks and their accompanying supplementary materials.  (Id. ¶ 46).  Because the works offered for sale are digital copies of the Plaintiffs' works, an item, once purchased, can be copied and further distributed to an unlimited number of people.  (ECF No. 31 (Decl. of Jessica Stitt, dated July 16, 2014 ("Stitt Decl.")) ¶ 11 & Exs. 1-3; ECF No. 34 (Decl. of Richard P. Essig, dated July 15, 2014 ("Essig Decl.")) ¶ 11 & Exs. 1-3).

III.   Standard of Review

In light of the Defendants' default, the Plaintiffs' well pleaded allegations concerning issues other than damages must be accepted as true.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Accordingly, the only issue presently before the Court is the quantum of damages and any other relief that the Plaintiffs should be awarded.

---

[3] The Plaintiffs hold copyrights in at least 453 of these works.  (See id. ¶¶ 30, 50 & Ex. A).  Additionally, the Plaintiffs' works sold on the eBookave site also bear trademarks and service marks that are registered to them or their affiliates on the Principal Register of the United States Patent and Trademark Office.  (Id. ¶ 31 & Ex. B).

Although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of admissible evidence, see Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 224 (S.D.N.Y. 2003), a hearing is unnecessary so long as (a) the Court has determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the Plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Here, because both requirements have been met, there is no need for a hearing.

IV. Discussion

    A. Applicable Law

        1. Copyright Act

Under the Copyright Act, an infringer of a copyright is liable for either (a) the copyright owner's actual damages and any additional profits of the infringer or (b) statutory damages. 17 U.S.C. § 504(a); Brown v. Party Poopers, Inc., No. 00 Civ. 4799 (JSM) (DFE), 2001 WL 1380536, at *4 (S.D.N.Y. July 9, 2001).

A copyright owner who elects statutory damages may recover for each infringement the "sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Additionally, if the infringement is willful, the Court may increase an award of statutory damages to a maximum of $150,000 per infringement. Id. § 504(c)(2). If the infringer "was not aware and had no reason to believe that" its "acts

constituted an infringement," the Court may "reduce the award of statutory damages to a sum of not less than $200." Id.  Within these limits, the Court has broad discretion in awarding statutory damages.  Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116 (2d Cir. 1986); Nat'l Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001).

In determining the appropriate award of statutory damages, the Court may consider such factors as "the expenses saved and profits reaped by the defendants, the revenues lost by the Plaintiffs, the value of the copyright, the deterrent effect of the award on other potential infringers, and factors relating to individual culpability." Jett v. Ficara, No. 04 Civ. 9466 (RMB) (HBP), 2007 WL 2197834, at *7 (S.D.N.Y. July 31, 2007) (collecting cases).  Ultimately, the "statutory damages [award] should bear some relation to actual damages suffered." Van Der Zee v. Greenidge, No. 03 Civ. 8659 (RLE), 2006 WL 44020, at *2 (S.D.N.Y. Jan. 6, 2006) (quoting RSO Records, Inc. v. Peri, 596 F. Supp. 849, 862 (S.D.N.Y. 1984)).

### 2. Lanham Act

Under Section 35(a) of the Lanham Act, a trademark owner may choose to recover either actual or statutory damages.  15 U.S.C. § 1117(a), (c); Gucci Am., Inc. v. MyReplicaHandbag.com, No. 07 Civ. 2438 (JGK) (DFE), 2008 WL 512789, at *2 (S.D.N.Y. Feb. 26, 2008).  If a trademark owner opts to recover statutory damages, it may be awarded "not less than $1,000 or more than $200,000 per counterfeit mark" or, "if the

court finds that the use of the counterfeit was willful, not more than $2,000,000 per counterfeit mark." 15 U.S.C. § 1117(c)(1), (2).

In the absence of any guidelines for determining the appropriate statutory damages to award in a trademark case, courts often have looked for guidance to the analogous statutory damages provision of the Copyright Act, 17 U.S.C. § 504(c). Tiffany (NJ) LLC v. Dong, No. 11 Civ. 2183 (GBD) (FM), 2013 WL 4046380, at *5 (S.D.N.Y. Aug. 9, 2013) (collecting cases).

    B.    Damages

        1.    Duplicative Damages

Typically, "a plaintiff seeking compensation for the same injury under different legal theories is only entitled to one recovery. . . . However, the Court may award damages under both the Lanham Act and the Copyright Act where the [two awards serve separate purposes]." Viacom Int'l Inc. v. Fanzine Int'l, Inc., No. 98 Civ. 7488 (RCC), 2001 WL 930248, at *5 (S.D.N.Y. Aug. 16, 2001). An award of statutory damages under the Copyright Act and actual damages under the Lanham Act consequently is permissible because statutory damages serve a punitive purpose while actual damages serve to compensate a loss. Lyons P'ship, L.P. v. AAA Entm't Inc., No. 98 Civ. 0475 (DAB) (MHD), 1999 WL 1095608, at *10 (S.D.N.Y. Dec. 3, 1999).

By comparison, a plaintiff should not be awarded statutory damages under both the Copyright Act and the Lanham Act. As Judge Torres noted in Tu, a single grant of statutory damages can adequately compensate a plaintiff for its losses. Tu, 2009 WL

2905780, at *4.  Additionally, "the broad range of statutory damages available under either the Copyright Act or the Lanham Act is sufficient to put potential infringers 'on notice that it costs less to obey [intellectual property] laws than to violate them.'"  Id. (quoting N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc., No. 89 Civ. 6082, 1991 WL 113283, at *4 (S.D.N.Y. June 14, 1991) (brackets in original).  Recovery under the Copyright Act is the appropriate remedy when the essence of the lawsuit is the selling and distribution of "pirated version[s] of [p]laintiffs' copyrighted material[s]," even if trademark damages under the Lanham Act also may be allowed.  Id. at *5.

In this case, the Plaintiffs seek to recover statutory damages, under both the Copyright Act and the Lanham Act, totaling $16,590,000, for the unauthorized sale of their textbooks.  (Pls.' Inquest Mem. ¶¶ 39-48, 52-54, 62-63).  All but $3 million of this amount (15 trademarks x $200,000) is attributable to statutory damages under the Copyright Act.  (See id. ¶¶ 48, 54, 62-63).  The Plaintiffs, however, are barred from recovering statutory damages under both statutes.  Since the Defendants' unauthorized sale of the Plaintiffs' copyrighted materials is the substantial cause of their damages, their statutory damages should be limited to those recoverable under the Copyright Act.

2. Copyright Act

The Plaintiffs seek to recover statutory damages in the amount of $30,000 per copyright for the Defendants' infringement of each of their 453 copyright-protected works, i.e., a total of $13,590,000.  (Id. ¶ 48).  There is no question that these infringements were willful.  Indeed, this is the second suit that the Plaintiffs (other than

Elsevier) have brought against Shi for the same conduct.  Shi therefore had prior notice that his conduct was wrongful.  (Compl. ¶ 14).  Shi nonetheless took extreme measures to conceal his identity as the operator of the Websites from the Plaintiffs, and blocked the Plaintiffs and their lawyers from accessing his sites.  (Id. ¶¶ 36-45).  Furthermore, when the ISPs hosting Shi's websites learned that Shi was violating their terms of service and shut down the sites, Shi simply restarted his business using new ISP hosts.  (Id. ¶¶ 41-42, 45).  Even if the proof of the Defendants' willfulness were not so startlingly clear, the Plaintiffs have alleged in their Complaint that the Defendants' conduct was willful, and through his default Shi has admitted that allegation.  This alone would be sufficient for a finding of willfulness.  See, e.g., Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725, 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010) (Chin, D.J.).

As a consequence of the Defendants' willful conduct, and their subsequent default, it is difficult to assess either their profits or the Plaintiffs' lost revenues.  (Pls.' Inquest Mem. ¶ 47).  Nonetheless, it is clear that the Defendants profited substantially from their infringing conduct, while the Plaintiffs suffered losses.  For example, the Defendants bore none of the costs of creating any of the copyrighted works, yet profited from their unauthorized sale.  (Compl. ¶¶ 3, 25, 32-33, 46).  In contrast, despite investing heavily in the creation of the copyrighted works, the Plaintiffs have seen no profits from the Defendants' sales.  (Id. ¶¶ 2, 5, 7, 18, 25-30, 33-34, 42).  All of this augurs in favor of a substantial statutory damages award.  A substantial damages award also is warranted because the Defendants have violated both the Plaintiffs' copyrights and their trademark

rights.  See Tu, 2009 WL 2905780 at *6 (finding an award of the $150,000 statutory maximum fair because the defendant violated not only the Copyright Act, but also the Lanham Act and the Digital Millennium Copyright Act).

That said, an award of the $13,590,000 in statutory damages sought by the Plaintiffs seems like overkill, especially since there has been no showing of any actual decline in the Plaintiffs' sales.  Moreover, although Shi was operating several corporations, he is the only defendant likely to have any assets and is an individual.  For these reasons, I recommend the Plaintiffs be awarded statutory damages in the amount of $5 million under the Copyright Act.  If collected, this amount should be more than adequate to compensate the Plaintiffs for their losses and to deter future infringement by Shi.

The Copyright Act does not expressly provide for prejudgment interest, but I and other judges in this District have previously concluded that such an award is appropriate.  See, e.g., EMI April Music, Inc. v. 4MM Games, LLC., No 12 Civ. 2080 (DLC) (JLC), 2014 WL 325933, at *9 (S.D.N.Y. Jan. 13, 2014), report & rec. adopted, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014); TigerCandy Arts, Inc. v. Blairson Corp., 09 Civ. 6215 (GBD) (FM), 2012 WL 760168, at *6 (S.D.N.Y. Feb. 23, 2012) (citing Dweck v. Amadi, No. 10 Civ. 2577 (RMB) (HBP), 2011 WL 3809907, at *5-6 (S.D.N.Y. July 26, 2011)), rep. & rec. adopted, 2012 WL 1948816 (S.D.N.Y. May 30, 2012).  I therefore further recommend that the Plaintiffs be awarded  prejudgment interest on their statutory copyright damages "at a rate equal to the weekly average 1-year constant maturity

Treasury yield . . . for the calendar week preceding the date of judgment." TigerCandy Arts, 2012 WL 76018, at *6 (citing 28 U.S.C. § 1961).  That interest award should run from the date the Complaint was filed through the date judgment is entered.

    C.    Injunction

The Plaintiffs also seek an injunction permanently enjoining Shi from engaging in any future infringements of their trademarks and copyrights.  (Compl. ¶¶ 88-91; Pls.' Inquest Mem. ¶¶ 55-60).  A court may issue an injunction when the moving party establishes that there is a statutory basis for relief and that it "meets the prerequisites for the issuance of an injunction."  Pitbull Prods., Inc. v. Universal Netmedia, Inc., No. 07 Civ. 1784 (RMB) (GWG), 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007) (quoting Kingvision Pay-Per-View Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006)).  The second of these requirements compels a party seeking an injunction to "demonstrate irreparable harm and the absence of an adequate remedy at law."  Id.  In intellectual property actions, such permanent injunctions generally are granted when there is "a threat of continuing [violations]."  See Software Freedom Conservancy, Inc. v. Best Buy Co., No. 09 Civ. 10155 (SAS), 2010 WL 2985320, at *2-3 (S.D.N.Y. July 27, 2010) (granting permanent injunction because defendant continued its violations even after being "informed of its unlawful infringement").

The first requirement for injunctive relief plainly is satisfied here because the Copyright Act authorizes a court to "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C.

§ 502(a).  Similarly, the Lanham Act provides that federal courts "have power to grant injunctions, according to the principles of equity" in trademark infringement cases. 15 U.S.C. § 1116(a).  The second requirement for injunctive relief also is satisfied because the Defendants, by virtue of their default, have admitted that they infringed Plaintiffs' copyrights and trademarks.  Shi's use of several successor sites and ISPs further evidences the Defendants' intention to continue infringing the Plaintiffs' copyrights and trademarks despite having received demands to cease and desist.  An injunction against any further infringing activities by the Defendants therefore should be entered.

V.      Conclusion

For the reason set forth above, I recommend that the Plaintiffs be awarded $5 million in statutory damages under the Copyright Act, plus prejudgment interest from the date the Complaint was filed, calculated at the rate set forth in 28 U.S.C. § 1961.  The Defendants also should be permanently enjoined from further infringing the Plaintiffs' copyrights and trademarks.

VI.     Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick at the Thurgood Marshall United

States Courthouse, 40 Foley Square, New York, NY 10007, the chambers of the undersigned at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, NY 10007, and any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Broderick.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  See U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:     New York, New York
           September 3, 2015

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Plaintiffs' counsel via ECF

Defendants (via email)
service@bookave.com
ebookave@163.com
Joondalupwa@gmail.com